1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                   **NORTHERN DISTRICT OF CALIFORNIA**
6                        **SAN JOSE DIVISION**
7

8    JUNIPER NETWORKS, INC.,                 Case No.  20-cv-02360-BLF
9                    Plaintiff,
                                             **ORDER GRANTING MOTION TO**
10          v.                               **DISMISS FOR LACK OF PERSONAL**
                                             **JURISDICTION, WITH LEAVE TO**
11   BRUNO ANDRADE, MARS                     **AMEND; AND DEFERRING MOTION**
     INVESTMENT ACCELERATOR FUND             **TO DISMISS OR STAY BASED ON**
12   INC., NORTHSPRING CAPITAL               ***FORUM NON CONVENIENS* AND**
     PARTNERS INC., JOSMEYR ALVES            **COMITY**
13   DE OLIVEIRA, and RUBEN MARCOS
     SEIDL,                                  [Re:  ECF 26]
14
                     Defendants.
15

16          This suit arises from the acquisition of a software company, HTBase Corporation

17   ("HTBase"), by Plaintiff Juniper Networks, Inc. ("Juniper") through Juniper's wholly owned

18   subsidiary, 1187474 B.C. Unlimited Liability Company ("118 ULC").  118 ULC entered into a

19   Share Purchase Agreement ("SPA") with HTBase and its shareholders (referred to as "Vendors")

20   for the purchase of all common and preferred shares of HTBase, with Juniper signing as guarantor

21   of the purchase price.  Juniper claims that although the Vendors represented in the SPA that all

22   third-party technology and intellectual property incorporated into HTBase products had been

23   disclosed, Juniper discovered after close of the transaction that HTBase's flagship product, Juke,

24   incorporates undisclosed open source software.  Juniper sues five of the signatory Vendors for

25   breach of the SPA:  Bruno Andrade ("Andrade"), Mars Investment Accelerator Fund Inc.

26   ("Mars"), Northspring Capital Partners Inc. (Northspring"), Josmeyr Alves De Oliveira

27   ("Oliveira"), and Ruben Marcos Seidl ("Seidl").  Juniper also sues Andrade for fraudulent and

28   negligent misrepresentation.

*(left margin, vertical text)* United States District Court Northern District of California

United States District Court
Northern District of California

1    Defendants have filed a motion seeking multiple forms of relief.  Canadian companies

2    Mars and Northspring, and Brazilian domiciliaries Oliveira and Seidl (collectively, "Foreign

3    Defendants"), seek dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(2) for

4    lack of personal jurisdiction.  In addition, all Defendants move to dismiss the complaint or stay the

5    action based the doctrine of *forum non conveniens* and principles of comity.

6    For the reasons discussed below, the Foreign Defendants' motion to dismiss for lack of

7    personal jurisdiction is GRANTED WITH LEAVE TO AMEND.  The motion to dismiss or stay

8    based on *forum non conveniens* and comity is DEFERRED.

9    **I.    BACKGROUND**

10    Juniper is a California-based corporation that designs and sells networking products and

11    services.  In 2018, Juniper considered investing in HTBase, a Canadian company that "developed

12    software that helps companies manage their storage, computing, and networking infrastructures

13    across private data centers and cloud providers (*e.g.*, Amazon Web Services, Google Cloud

14    Platform, Microsoft Azure, etc.)."  Hutchins Decl. ¶ 6, ECF 27-4.  The storage capabilities of

15    HTBase's Juke product was of particular interest to Juniper.  *See id.* ¶ 16.

16    Juniper officers began negotiations with Andrade, HTBase's founder and Chief Executive

17    Officer ("CEO"), first for Juniper's investment in HTBase and ultimately for Juniper's acquisition

18    of HTBase.  *See* Hutchins Decl. ¶¶ 7-16.  Andrade visited Juniper's Sunnyvale, California campus

19    numerous times between February and October of 2018.  *See id.*  Andrade was in regular contact

20    with Juniper employees throughout 2018, through in-person meetings, emails, and telephone calls.

21    *Id.* ¶ 25.

22    In October 2018, Juniper sent a Letter of Intent ("LOI") to Andrade, setting forth a

23    proposal for Juniper's acquisition of HTBase.  *See* Hutchins Decl. ¶ 23 and Exh. B.  Andrade

24    presented the proposal to HTBase's Board and then sent Juniper comments regarding the proposal.

25    *See* Sitter Decl. Exh. M, ECF 29-13.  Juniper responded by sending Andrade an updated LOI,

26    which Andrade took to the Board.  *See* Sitter Decl. Exh N, ECF 29-14.  After the Board accepted

27    that offer, Andrade executed the updated LOI as "CEO – Founder" of HTBase.  *See* Sitter Decl.

28    Exh C, ECF 29-3

1    United States District Court
     Northern District of California

1         During Juniper's due diligence review, Andrade worked with Juniper employees located in

2   California.  Hutchins Decl. ¶ 26.  As part of the due diligence process, HTBase submitted source

3   code and binary files to be scanned by Black Duck, a company specializing in determining

4   whether a company's software incorporates open source software.  *See* Compl. ¶ 34, ECF 23;

5   Andrade Decl. ¶ 7, ECF 21-1.  Open source software is software that a developer can use,

6   generally free of charge, subject to licensing restrictions.  *See* Compl. ¶ 35.  Juniper claims that

7   Andrade personally selected which source code and binary files HTBase sent to Black Duck for

8   scanning.  *See* Compl. ¶ 40.  Black Duck's scan did not identify any open source software in

9   HTBase's source code or binary files.  *See* Compl. ¶ 41.

10        On November 16, 2018, a group of Juniper's engineers and product managers met with

11  HTBase representatives in Toronto to discuss HTBase's intellectual property and products,

12  including Juke.  *See* Compl. ¶ 43.  Andrade was present at the meeting and answered questions

13  about Juke.  *See* Compl. ¶ 44; Andrade Decl. ¶ 6, ECF 21-1.  According to Juniper, Andrade stated

14  that Juke's file system was proprietary to HTBase, was HTBase's intellectual property, and was a

15  core component of Juke.  *See* Compl. ¶ 45.

16        Juniper decided to go forward with the acquisition of HTBase, creating a Canadian

17  subsidiary, 118 ULC, specifically for the acquisition.  Hutchins Decl. ¶ 28.  On November 28,

18  2018, 118 ULC entered into the SPA with HTBase and the Vendors for the purchase of all

19  common and preferred shares of HTBase.  *See* SPA, Compl. Exh. A, ECF 23-1.  Juniper signed

20  the SPA as guarantor of the purchase price.  *See id.*  Paragraph 4.2 of the SPA, "Vendors'

21  Representations and Warranties Concerning the Corporation," states that 118 ULC entered into the

22  SPA in reliance on the representations and warranties of the Vendors set out in Paragraph 4.2,

23  each representation and warranty being made by each Vendor "severally as to itself, and not

24  jointly or jointly and severally as to any other Vendor."  SPA ¶ 4.2.  Each Vendor represented and

25  warrantied among other things that all third-party technology and intellectual property

26  incorporated into HTBase products had been disclosed; all HTBase intellectual property was

27  transferrable without restriction; and HTBase owned or had licenses to all source code in its

28  software.  *See id.*

United States District Court
Northern District of California

1    Paragraph 7.2 of the SPA requires the Vendors to indemnify the other parties to the SPA

2    for damages arising from breach of the Vendors' representations and warranties.  SPA ¶ 7.2.  The

3    Indemnified Party must submit a Claim Notice to each relevant Vendor through the "Vendors'

4    Representative."  SPA ¶ 7.4.  The Vendors' Representative has authority to give and receive

5    notices, settle claims, and take other action on behalf of each Vendor.  SPA ¶ 12.4(2).  The SPA

6    designates Andrade as the Vendors' Representative.  SPA ¶ 12.4(1).

7    Juniper and HTBase announced the acquisition on November 29, 2018.  *See* Hutchins

8    Decl. ¶ 29.  Juniper wired the purchase price on December 7, 2018.  *See id.* ¶ 30.  After the

9    acquisition, Andrade and other HTBase employees joined Juniper.  *See* Compl. ¶ 54.  Juniper

10   alleges that Andrade maintained strict control over the Juke source code, and prevented other

11   employees from accessing it.  *See* Compl. ¶ 55.  Andrade resigned from Juniper effective October

12   15, 2019.  *See* Compl. ¶ 56.  Juniper alleges that around that time, a Juniper product manager

13   discovered that Juke contains copies of files from an open source code project called Lizard FS.

14   *See* Compl. ¶¶ 61-65.  Juniper removed Juke from its product catalog.  *See* Compl. ¶ 68.

15   On December 5, 2019, Juniper sent a Claim Notice to Andrade as the Vendors'

16   Representative under the SPA.  *See* Compl. ¶ 69.  The Claim Notice identified two alleged

17   breaches of the SPA by Vendors:  breach of representations and warranties regarding the amount

18   of HTBase's accounts receivable, and breach of representations and warranties regarding

19   HTBase's intellectual property.  On the latter breach, Juniper asserted in its Claim Notice that the

20   Vendors breached provisions of Paragraph 4.2 of the SPA by failing to disclose that Juke includes

21   LizardFS open source software components.  *See* Compl. ¶¶ 69-78.

22   On February 28, 2020, Juniper filed the present action in the Santa Clara County Superior

23   Court, asserting a claim for breach of the SPA against Andrade, Mars, Northspring, Oliveira, and

24   Seidl.  The contract claim is based on those Vendors' alleged breach of representations and

25   warranties contained in the SPA.  *See* Compl. ¶¶ 84-93.  Juniper also asserts claims for fraudulent

26   and negligent misrepresentation against Andrade.  *See* Compl. ¶¶ 94-125.  Defendants removed

27   the action to federal district court based on diversity of citizenship.  *See* Notice of Removal, ECF

28   1.

4

United States District Court
Northern District of California

## II.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Foreign Defendants – Mars, Northspring, Oliveira, and Seidl – move to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Juniper contends that dismissal is inappropriate because it has made the requisite showing that the Court has personal jurisdiction over the Foreign Defendants.

### A.   Legal Standard

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). California's long-arm statute is coextensive with federal due process requirements. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* "[T]he plaintiff cannot simply rest on the bare allegations of its complaint," but the uncontroverted allegations in the complaint must be accepted as true. *Schwarzenegger*, 374 F.3d at 800 (quotation marks and citation omitted). Factual disputes created by conflicting affidavits must be resolved in the plaintiff's favor. *Id.*

### B.   Discussion

A federal district court may exercise either general or specific personal jurisdiction over a nonresident defendant. *Daimler*, 134 S. Ct. at 754. General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (internal quotation marks and citation omitted). Specific jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise

5

out of or relate to those contacts.  *Daimler*, 571 U.S. at 127.

### 1.   General Jurisdiction

The Foreign Defendants challenge the existence of general jurisdiction, submitting declarations establishing that they do not own property or bank accounts in California, do not pay taxes in California, are not licensed or registered to do business in California, have no employees in California, do not travel to California for business, and do not have regular contacts with California or California residents as part of their normal business operations.  *See* Leonard Decl. ¶¶ 2-4, ECF 21-2; Hunter Decl. ¶¶ 2-4, ECF 21-3; Oliveira Decl. ¶ 5, ECF 21-4; Seidl Decl. ¶ 4, ECF 21-5.  Juniper does not attempt to rebut these declarations or to establish that the Foreign Defendants are subject to this Court's general jurisdiction.

### 2.   Specific Jurisdiction

Foreign Defendants also challenge the existence of specific jurisdiction, submitting declarations establishing that they did not have communications or other dealings directly with Juniper or any of its representatives in the United States in connection with the HTBase acquisition, and that they executed the SPA in Canada (Mars and Northspring) and Brazil (Oliveira and Seidl).  *See* Leonard Decl. ¶ 5; Hunter Decl. ¶¶ 5-6; Oliveira Decl. ¶ 3; Seidl Decl. ¶ 3.  Juniper must make a *prima facie* showing of specific personal jurisdictional to withstand this challenge.  *See Ranza*, 793 F.3d at 1068.

The Ninth Circuit has established a three-prong test for whether a court can exercise specific personal jurisdiction:  (1) the defendant must have "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California"; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable, *i.e.* it must comport with fair play and substantial justice.  *Schwarzenegger*, 374 F.3d at 802.  The plaintiff bears the burden on the first two prongs.  *Id.*  "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."  *Id.*  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable."  *Id.* (quotation marks and citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

### a.       Purposeful Availment

As stated above, the first prong of the *Schwarzenegger* test requires Juniper to show either purposeful availment or purposeful direction by the Foreign Defendants.  "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018) (quotation marks and citation omitted).  "By contrast, [a] showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere."  *Id.* (quotation marks and citation omitted).  "[A] purposeful availment analysis is most often used in suits sounding in contract, whereas a purposeful direction analysis is most often used in suits sounding in tort."  *Id.* (quotation marks and citation omitted).

A purposeful availment analysis is most appropriate here, as the Foreign Defendants are sued only for breach of contract.  Juniper argues that the Foreign Defendants purposefully availed themselves of the privilege of doing business in California through Andrade, asserting that Andrade acted as the Foreign Defendants' agent both before and after execution of the SPA.  Under this agency theory, Juniper contends that Andrade's contacts with California may be imputed to the Foreign Defendants.

The Ninth Circuit's *Williams* decision sets forth the controlling law.  *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).  Observing that the Supreme Court's *Daimler* opinion "voided our agency approach for imputing contacts for the purpose of general jurisdiction," the Ninth Circuit noted that *Daimler* "left open the question of whether an agency relationship might justify the exercise of specific jurisdiction."  *Williams*, 851 F.3d at 1023.  "Assuming [ ] that some standard of agency continues to be relevant to the existence of specific jurisdiction," the Ninth Circuit held, "[f]undamental tenets of agency theory require that an agent act on the principal's behalf and subject to the principal's control."  *Id.* at 1024 (quotation marks and citations omitted).

The *Williams* court applied this standard to the appellants' assertion that appellee Yamaha Motor Co. Ltd. ("YMC") was subject to specific personal jurisdiction in California based on the contacts of its subsidiary, appellee Yamaha Motor Corporation, U.S.A. ("YMUS"). *See Williams*, 851 F.3d at 1024-25. The Ninth Circuit determined that the appellants "neither allege nor otherwise show that YMC had the right to control YMUS's activities in any manner at all." *Id*. at 1025. The Ninth Circuit therefore concluded that "even assuming the validity of some formulation of agency analysis such that a subsidiary's contacts *could* be attributed to its parent, Appellants failed to establish specific jurisdiction over YMC." *Id*.

Like the appellants in *Williams*, Juniper "neither allege[s] nor otherwise show[s]" that the Foreign Defendants had the right to control Andrade's activities. The only agency allegations in the complaint are generic. Paragraph 12 of the complaint states that "Defendants, and each of them, were partners, joint venturers, agents, employees, alter egos, and/or representatives of each other in doing the things herein alleged and, in doing so, were acting within the scope of their respective authorities as agents, employees, and representatives, and are jointly and severally liable to Juniper." Compl. ¶ 12. Paragraph 13 states that "[t]his Court also has jurisdiction over all Defendants because, upon information and belief, they engaged in intentional conduct, either directly or through agents, directed at Juniper that caused harm to Juniper in California." Compl. ¶ 13. In *Williams*, the Ninth Circuit disregarded similar language as "a conclusory legal statement unsupported by any factual assertion regarding YMC's control over YMUS (or regarding any other aspect of the parent-subsidiary relationship)." *Williams*, 851 F.3d at 1025 n.5.

Juniper's arguments and evidence in opposition to the motion to dismiss similarly are lacking. Juniper devotes a single sentence in its opposition brief to the issue of control during the period prior to execution of the SPA, asserting that "[t]he HTBASE shareholders maintained control over Andrade insofar as they rejected Juniper's initial acquisition structure before ultimately allowing Andrade to sign the LOI." Pl.'s Opp. at 8, ECF 28. In support of this assertion, Juniper cites Exhibits C, M, and N to the Sitter Declaration, which are emails between Andrade and Juniper regarding the LOI. Exhibit M reflects that Juniper sent Andrade a draft LOI on October 25, 2018, which Andrade presented to HTBase's Board. *See* Sitter Decl. Exh. M, ECF

29-13.  After the Board meeting, Andrade responded to Juniper with comments that resulted from the Board meeting.  *See id.*  Exhibit N shows that Juniper thereafter sent Andrade an updated LOI.  Sitter Decl. Exh. N, ECF 29-14.  Finally, Exhibit C is Andrade's email to Juniper stating that HTBase's Board accepted the offer set forth in the updated LOI.  *See* Sitter Decl. Exh. C, ECF 29-3.  Andrade attached the executed updated LOI, as well as an exclusivity agreement, which he signed as "CEO – Founder" of HTBase.  *See id.*  Nothing in this evidence suggests that Andrade was acting as an agent for, and subject to the control of, Foreign Defendants Mars, Northspring, Oliveira and Seidl.  To the contrary, it appears that Andrade was acting in his role as CEO of HTBase, on behalf of and subject to the control of HTBase's Board.  *See Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) ("For jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively.").

With respect to the period after execution of the SPA, Juniper argues that Andrade's contacts with California may be imputed to the Vendors in light of the SPA's express designation of Andrade as the Vendor's Representative.  Juniper points out that Andrade took actions in his role as Vendors' Representative between the execution of the SPA on November 28, 2018, and the close of the transaction on December 7, 2018, when the purchase price was paid.  At the hearing, the Court indicated that it agreed with Juniper that Andrade qualified as the Vendors' agent as of the execution of the SPA, but it questioned whether Juniper's claim for breach of contract arose out of any post-execution actions taken by Andrade.  As discussed below, the Court concludes that Juniper has failed to show that its contract claim against the Foreign Defendants arose out of any conduct by Andrade after execution of the SPA.  Moreover, after further review if the SPA in light of the parties' arguments, the Court is not persuaded that the SPA's designation of Andrade as the Vendors' Representative satisfies the *Williams* requirements for agency.

Under *Williams*, specific jurisdiction may be based on an agent's contacts with the forum state only where the "agent act[s] on the principal's behalf *and* subject to the principal's control."  *Williams*, 851 F.3d at 1024 (quotation marks and citations omitted, emphasis added).  While the SPA certainly establishes that Andrade acted on the Vendors' behalf in his role as Vendors'

United States District Court
Northern District of California

1   Representative, it does not establish that Andrade was subject to the Vendors' control.  To the

2   contrary, the SPA grants Andrade "the full and unconditional authority, on behalf of each Vendor,

3   to give and receive notices, to settle claims or disputes and to take or omit to take, on behalf of

4   each Vendor, such action as the Vendors' Representative deems necessary or appropriate with

5   respect to this Agreement."  SPA ¶ 12.4(2).  Further, the SPA provides that "[a]ll decisions and

6   actions taken by the Vendors' Representative shall be binding upon all Vendors, *and no Vendor*

7   *shall have the right to object, dissent, protest or otherwise contest the same.*"  *Id.* (emphasis

8   added).  Absent some evidence that the Vendors nonetheless did exercise control over the manner

9   in which Andrade fulfilled his obligations as Vendors' Representative, the Court concludes that

10  Juniper has not demonstrated that Andrade's contacts with California may be imputed to the

11  Foreign Defendants.

12       Juniper's reliance on cases that pre-date *Daimler* and *Williams* is misplaced.  As the

13  Foreign Defendants point out in their reply brief, *Daimler* and *Williams* altered the standard for

14  exercising personal jurisdiction based on contacts of agents.  Thus, citation to earlier cases that do

15  not address the control issue are unhelpful to the analysis required here.

16       At the hearing, a dispute arose between counsel as to whether HTBase moved its

17  headquarters from Canada to California prior to the close of the transaction.  Juniper's counsel

18  pointed to evidence that the move was made, while Defendant's counsel pointed to evidence that it

19  was not.  Juniper's counsel argued, correctly, that on a Rule 12(b)(2) motion all factual disputes

20  created by conflicting affidavits must be resolved in the plaintiff's favor.  *See Schwarzenegger*,

21  374 F.3d at 800.  Whether HTBase moved its headquarters to California has no bearing on the

22  issue of agency, which is the only basis upon which Juniper has asserted personal jurisdiction over

23  the Foreign Defendants.

24       For the reasons discussed above, Juniper has not alleged or otherwise demonstrated that

25  Andrade's contacts with California may be imputed to the Foreign Defendants under an agency

26  theory, as governed by *Williams*.  Accordingly, Juniper has failed to meet its burden of showing

27  that the Foreign Defendants purposefully availed themselves of the privilege of doing business in

28  California as required under the first prong of the *Schwarzenegger* test.

United States District Court
Northern District of California

### b.      Arising Out Of

In determining whether a plaintiff's claim arises out of or relates to the defendant's forum-related activities, "the Ninth Circuit follows the 'but for' test." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (internal quotation marks and citation omitted). Under this test, Juniper must show that it would not have suffered an injury "but for" the Foreign Defendants' California-related conduct.

Juniper sues the Foreign Defendants for breaching representations and warranties that *they themselves* made in the SPA. Each of the Foreign Defendants signed the SPA on its own behalf. The SPA provides that the representations and warranties therein were made by each Vendor "severally as to itself, and not jointly or jointly and severally as to any other Vendor." SPA ¶ 4.2. Accordingly, it appears from the face of the complaint and the SPA attached thereto that Juniper's breach of contract claims against the Foreign Defendants arise from the Foreign Defendants' own representations and warranties in the SPA, which was executed on November 28, 2018.

Given the nature of Juniper's contract claim, it is unclear how the claim arises from or relates to Andrade's conduct. At the hearing, Juniper's counsel pointed to language in the SPA requiring that the representations and warranties of the Vendors be true at the time of closing. Although the SPA was executed on November 28, 2018, the transaction did not close until December 7, 2018. Juniper attaches great significance to Andrade's performance of duties as the Vendors' Representative during the period between November 28, 2018 and December 7, 2018, arguing that Andrade's contacts with California during that period may be imputed to the Foreign Defendants. Counsel recited Andrade's acts in finalizing the purchase price, providing the closing statement, and providing the closing spreadsheet after the SPA was executed and before the transaction closed. But as Defendants' counsel pointed out at the hearing, Juniper's contract claim does not allege breaches relating to the purchase price or closing spreadsheets. Juniper's claim is for breach of the representations and warranties made in the SPA, none of which were made after the date the SPA was signed.

The Court finds that Juniper has failed to show that its contract claim arises from or relates to Andrade's conduct under the "but for" test applicable to the second prong of *Schwarzenegger*.

### c.    Reasonableness

Because Juniper has failed to satisfy its burden with respect to the first two prongs, the burden does not shift to the Foreign Defendants to satisfy the third prong of the *Schwarzenegger* test.  *See Schwarzenegger*, 374 F.3d at 802 (burden shifts to the defendant to show that exercise of personal jurisdiction would not be reasonable only if the plaintiff satisfies both of the first two prongs).

### d.    Juniper's Evidentiary Objections to Reply Evidence

Juniper objects to the Supplemental Andrade Declaration and the Elliott Declaration submitted with Defendants' reply brief.  According to Juniper, submission of those declarations is an improper attempt to introduce new evidence in the reply.  *See Rivera v. Saul Chevrolet, Inc.*, No. 16-CV-05966-LHK, 2017 WL 3267540, at *6 (N.D. Cal. July 31, 2017) ("[T]he Court need not consider this evidence because the submission of new facts in a reply brief is improper.").  Juniper also raises specific objections to portions of the declarations based on foundation, hearsay, and relevance.  The Court need not address Juniper's evidentiary objections because it did not rely on the Supplemental Andrade Declaration or the Elliott Declaration in evaluating the Foreign Defendants' motion for dismiss for lack of personal jurisdiction.

### e.    Conclusion

In light of the foregoing, the Court concludes that Jupiter has failed to make a *prima facie* showing that the Foreign Defendants are subject to this Court's specific personal jurisdiction under California's long-arm statute.  The Foreign Defendants are entitled to dismissal on this basis.

The allegations of Juniper's complaint do not satisfy the agency requirements set forth in *Williams*, which is understandable given that the complaint was filed in state court.  While Juniper's opposition to the motion to dismiss likewise fails to make a *prima facie* showing of personal jurisdiction based on agency, it may be that Juniper could make such a showing consistent with the guidance provided in this order, particularly if jurisdictional discovery is permitted.  Juniper requests that, in the event the Court grants the Foreign Defendants' motion to dismiss for lack of personal jurisdiction, the Court permit Juniper to take jurisdictional discovery

United States District Court
Northern District of California

regarding the asserted agency relationship between Andrade and the Foreign Defendants. *See* Pl.'s Opp. at 14, ECF 28. While the Court would be amenable to allowing appropriate jurisdictional discovery in this case, Juniper's request is so vague that it cannot be granted as framed. Juniper's discovery request is denied without prejudice to a renewed request that sets forth a reasonable plan for limited jurisdictional discovery targeted to the asserted agency relationship.

Accordingly, the Court finds that dismissal for lack of personal jurisdiction with leave to amend is appropriate. In order to afford Juniper time to file a renewed request for jurisdictional discovery and/or to amend the complaint with additional jurisdictional facts that may be in Juniper's possession, the Court will grant Juniper ninety days to amend its complaint. The Court grants a more generous period for amendment than ordinarily would be afforded in light of the COVID-19 pandemic and the fact that trial in this case is not set to commence until February 2023.

Accordingly, the Foreign Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED WITH LEAVE TO AMEND. Juniper's request for leave to take jurisdictional discovery is DENIED WITHOUT PREJUDICE to a renewed request submitted as an administrative motion under Civil Local Rule 7-11. The deadline to respond to such motion shall be extended to seven days. No reply shall be permitted.

### III.   MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS* AND COMITY

All Defendants move to dismiss or stay this action based on the doctrine of *forum non conveniens* and principles of comity. Defendants assert that Canada is the proper forum for resolving this litigation, and that this action either should be dismissed so that Juniper may file its claims there, or should be stayed pending resolution of a parallel lawsuit regarding the SPA that currently is proceeding in Canada. In opposition, Juniper contends that California is a proper forum for this litigation, and that Defendants have not met their heavy burden to establish that it is appropriate to dismiss or stay this litigation.

For the reasons discussed below, the Court finds it appropriate to defer consideration of Defendants' motion to dismiss or stay on these grounds.

13

United States District Court
Northern District of California

1

### A.      Legal Standard

2

#### 1.      *Forum Non Conveniens*

3

"Federal district courts have discretion to dismiss an action under the doctrine of *forum*

4

*non conveniens*." *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 948 (9th Cir. 2017).  "Dismissal is

5

appropriate only if the defendant establishes (1) the existence of an adequate alternative forum,

6

and (2) that the balance of private and public interest factors favors dismissal." *Id*. (quotation

7

marks and citation omitted).  "[A] plaintiff is generally entitled to deference in its choice of forum,

8

especially if the plaintiff is a U.S. citizen or resident  *Id*. at 949-50.  "For a U.S. citizen's choice of

9

forum to be rejected, the private and public interest factors must strongly favor trial in a foreign

10

country."  *Id*. (quotation marks and citation omitted).

11

"The private interest factors are:  (1) the residence of the parties and the witnesses; (2) the

12

forum's convenience to the litigants; (3) access to physical evidence and other sources of proof;

13

(4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to

14

trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a

15

case easy, expeditious and inexpensive." *Ayco Farms*, 862 F.3d at 950 (quotation marks and

16

citation omitted).  "The public interest factors are (1) [the] local interest of [the] lawsuit; (2) the

17

court's familiarity with governing law; (3) [the] burden on local courts and juries; (4) [the amount

18

of] congestion in the court; and (5) the costs of resolving a dispute unrelated to [the] forum." *Id*.

19

(quotation marks and citation omitted, alterations in original).

20

District courts within the Ninth Circuit have found that a balancing of the *forum non*

21

*conveniens* factors may warrant a stay of litigation rather than dismissal.  *See, e.g., MGA Entm't*

22

*Inc. v. Deutsche Bank AG*, No. CV 11-4932-GW(RZX), 2012 WL 12892902, at *9 (C.D. Cal. Feb.

23

27, 2012) (finding that dismissal or stay was appropriate on *forum non conveniens* grounds);

24

*Ministry of Health, Province of Ontario, Canada v. Shiley Inc.*, 858 F. Supp. 1426, 1442 (C.D.

25

Cal. 1994) (staying action on *forum non conveniens* grounds).

26

#### 2.      Comity

27

"International comity is a doctrine of prudential abstention, one that counsels voluntary

28

forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second

14

1   sovereign also has a legitimate claim to jurisdiction under principles of international law." *Mujica*

2   *v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (quotation marks and citation omitted).  The

3   aspect of the doctrine referred to as "comity among courts" or "adjudicatory comity," is "viewed

4   as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case

5   properly adjudicated in a foreign state." *Id*. (quotation marks and citation omitted).  "[C]ourts

6   have struggled to apply a consistent set of factors in their comity analyses." *Id*. at 603.

7        The Ninth Circuit has found the following factors to be a useful starting point:  (1) the

8   strength of the United States' interest in using a foreign forum, (2) the strength of the foreign

9   governments' interests, and (3) the adequacy of the alternative forum.  *Mujica*, 771 F.3d at 603.

10  "The (nonexclusive) factors we should consider when assessing U.S. interests include (1) the

11  location of the conduct in question, (2) the nationality of the parties, (3) the character of the

12  conduct in question, (4) the foreign policy interests of the United States, and (5) any public policy

13  interests." *Id*. at 604.  "The proper analysis of foreign interests essentially mirrors the

14  consideration of U.S. interests." *Id*. at 607.

15       **B.       Discussion**

16       As set forth above, the propriety of dismissing or staying an action under either the

17  doctrine of *forum non conveniens* or principles of comity turns on (1) whether there is an adequate

18  alternative forum and (2) the Court's balancing of multiple factors relating to the private interests

19  of the parties and the public interests of the alternative fora.

20       There is no dispute that Ontario, Canada, is an adequate alternative forum.  The SPA

21  provides that "[e]ach Party agrees (a) that any Legal Proceeding relating to this Agreement may

22  (but need not) be brought in any court of competent jurisdiction in the Province of Ontario."  SPA

23  ¶ 12.12.  The SPA also provides that "[t]his Agreement shall be governed by and construed in

24  accordance with the laws of the Province of Ontario and the laws of Canada applicable in such

25  Province and this Agreement shall be treated, in all respects, as an Ontario contract."  SPA ¶

26  12.13.  Defendants argue expressly that Canada is an adequate forum, and Juniper concedes that

27  point in its opposition brief.  *See* Defs.' Motion at 12-13, ECF 26; Pl.'s Opp. at 15, ECF 28.

28       The Court's ruling on Defendants' motion to dismiss or stay thus depends on the balancing

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1    of the relevant private and public interest factors.  That balancing will be significantly impacted by

2    the Court's ultimate determination whether it has personal jurisdiction over the Foreign

3    Defendants.  For example, the weight given to private interest factors relevant to a *forum non*

4    *conveniens* analysis may be substantially different if the Court is considering only the claims

5    against Andrade or the claims against all Defendants.  In the former circumstance, the interests of

6    one resident party, Juniper, would be weighed against the interests of one nonresident party,

7    Andrade, who spent a great deal of time in California during the period in which the facts giving

8    rise to this suit occurred.  In the latter circumstance, Juniper's interests would be weighed against

9    those of multiple non-resident parties.

10          Similarly, the public interest factors relevant to both *forum non conveniens* and comity

11   principles may be substantially different if there are multiple nonresident defendants or only one.

12   Under a *forum non conveniens* analysis, the Court must weigh the local interest in the suit, which

13   the Ninth Circuit has characterized as the "local interest in having localized controversies decided

14   at home."  *See Ranza*, 793 F.3d at 1078 (quotation marks and citation omitted).  Under a comity

15   analysis, the Court must weigh the interests of both the United States and Canada.  *See Mujica*,

16   771 F.3d at 603.  The interests of the United States and California in having the litigation decided

17   here would be fairly strong if the Court were considering only the claims of a local plaintiff

18   against a single foreign defendant arising out of numerous in-person contacts with the forum.

19   However, those interests likely would be less strong if the Court were considering the claims of a

20   local plaintiff against multiple foreign defendants, especially taking into account the parties'

21   choice of Canada law.

22          The Court therefore concludes that the most sensible course is to defer Defendants' motion

23   to dismiss or stay based on *forum non conveniens* and comity pending resolution of whether this

24   Court has personal jurisdiction over the Foreign Defendants.  Other courts in this district have

25   deferred consideration of *forum non conveniens* pending a determination on personal jurisdiction.

26   *See Facebook, Inc. v. Studivz Ltd.*, No. C 08-3468 JF (HRL), 2009 WL 1190802, at *2 (N.D. Cal.

27   May 4, 2009) ("[T]he Court will defer ruling on *forum non conveniens* until the issue of personal

28   jurisdiction is ripe for consideration.").

1    Accordingly, a ruling on Defendants' motion to dismiss and stay on grounds of *forum non*

2  *conveniens* and comity is DEFERRED pending resolution of the Court's personal jurisdiction over

3  the Foreign Defendants.  The motion to dismiss and stay is TERMINATED WITHOUT

4  PREJUDICE to renewal, if appropriate, upon disposition of the personal jurisdiction issues.

5  **IV.   ORDER**

6    (1)    The Foreign Defendants' motion to dismiss for lack of personal jurisdiction under

7  Rule 12(b)(2) is GRANTED WITH LEAVE TO AMEND.  Any amended complaint shall be filed

8  on or before December 21, 2020.  Leave to amend is limited to factual allegations relating to

9  personal jurisdiction.  Juniper may not add new claims or parties without obtaining express leave

10  of the Court.

11    (2)    Defendants' motion to dismiss or stay based on *forum non conveniens* and comity

12  is DEFERRED pending resolution of the Court's personal jurisdiction over the Foreign

13  Defendants.  The motion to dismiss and stay is TERMINATED WITHOUT PREJUDICE to

14  renewal, if appropriate, upon disposition of the personal jurisdiction issues.

15    (3)    This order terminates ECF 26.

17  Dated: September 21, 2020

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California