UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| JUNIPER NETWORKS, INC., | Case No.  20-cv-02360-BLF |
| Plaintiff, |  |
| v. | **ORDER GRANTING MOTION TO DISMISS UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*; AND TERMINATING AS MOOT ALTERNATIVE MOTION TO STAY** |
| BRUNO ANDRADE, |  |
| Defendant. | [Re:  ECF 74] |

Plaintiff Juniper Networks, Inc. ("Juniper") claims that it was defrauded when it acquired software company HTBase Corporation ("HTBase") in reliance on misrepresentations made by HTBase's founder and CEO, Defendant Bruno Andrade ("Andrade").  Juniper sues Andrade for breach of contract, fraudulent misrepresentation, and negligent misrepresentation.

Andrade moves to dismiss or stay this lawsuit under the doctrine of *forum non conveniens* and principles of comity.  He asserts that Ontario, Canada is a more appropriate forum for Juniper's claims, in part because the parties are litigating a related action there.  Andrade asks the Court to dismiss the present lawsuit or, alternatively, to stay it pending resolution of the Ontario Action.  Juniper opposes Andrade's motion, arguing that there is little overlap between the present suit and the Ontario Action, there is no risk of inconsistent judgments if both proceed, and Juniper's choice of forum is entitled to deference.

For the reasons discussed below, the motion to dismiss is GRANTED, and the alternative motion to stay is TERMINATED AS MOOT.

## I.     BACKGROUND

### Juniper's Acquisition of HTBase

Juniper is a California-based corporation that designs and sells networking products.  In 2018, Juniper became interested in investing in or acquiring HTBase, a Canadian software developer.  *See* Hutchins Decl. ¶¶ 5-7, ECF 27-4.[1]  Juniper was particularly interested in the storage capabilities of HTBase's Juke product.  *See id.* ¶¶ 16-17.  Juniper negotiated with HTBase throughout 2018, dealing primarily with HTBase's founder and CEO, Andrade.  *See id.* ¶¶ 16-26.  Andrade is a Brazilian citizen and a permanent resident of Canada.  *See* Andrade Decl. ¶ 2, ECF 21-1.  Andrade traveled to California on several occasions to meet with Juniper officers and employees at Juniper's headquarters in Sunnyvale, California.  *See* Hutchins Decl. ¶¶ 16-26, ECF 27-4; Minnis Decl. ¶ 8, ECF 28-12.  Andrade also was in regular contact with Juniper employees in California through emails and telephone calls.  *See* Hutchins Decl. ¶ 25.  Andrade later purchased a home in Mountain View, California, where he currently resides.  *See* Suppl. Bobrow Decl. ¶ 11, ECF 77-4; Andrade Decl. ¶ 3, ECF 21-1; Statement of Claim ¶ 2, Bernstein Decl. Exh. A, ECF 28-10.

Juniper ultimately acquired HTBase in December 2018 through a wholly owned Canadian subsidiary that Juniper created specifically for the transaction, 1187474 B.C. Unlimited Liability Company ("118 ULC").  *See* Hutchins Decl. ¶¶ 28-30, ECF 27-4.  Juniper, 118 ULC, HTBase, and HTBase's shareholders (referred to as "Vendors") entered into a Share Purchase Agreement ("SPA") under which 118 ULC purchased all common and preferred shares of HTBase and Juniper acted as guarantor of the purchase price.  *See* SPA, Compl. Exh. A, ECF 23-1.  The purchase price was $22,500,000.  *See id.* ¶ 10.  The SPA authorized Juniper and 118 ULC (collectively, "Juniper") to hold back $2,500,000 of the purchase price (the "Holdback Amount")

---

[1] The parties' briefing on Andrade's renewed motion cites to evidence submitted with the Vendor Parties' prior motion to dismiss or stay.  While it has considered this evidence, the Court generally requires parties to provide all evidence *with* the briefing on motions submitted to the Court for decision.

United States District Court
Northern District of California

1    for one year after closing as a potential set-off for damages that might arise should the Vendors

2    breach the SPA. *See id.* ¶¶ 3.4. 7.13.

3           In the SPA, the Vendors made certain representations and warranties, including that:

4    HTBase's financial disclosures were accurate and complete; all third-party technology and

5    intellectual property incorporated into HTBase products had been disclosed; and HTBase owned

6    or had licenses to all source code in its software. *See* SPA ¶ 4.2. The SPA requires the Vendors to

7    indemnify the other parties to the SPA for damages arising from the Vendors' breach of their

8    representations and warranties. *See* SPA ¶ 7.2. In order to recover such damages, the

9    "Indemnified Party" must submit a Claim Notice to each relevant Vendor through the "Vendors'

10   Representative." SPA ¶ 7.4. The Vendors' Representative has authority to give and receive

11   notices, settle claims, and take other action on behalf of each Vendor. *See* SPA ¶ 12.4(2). The

12   SPA designates Andrade as the Vendors' Representative. *See* SPA ¶ 12.4(1).

13          The SPA contains an Attornment clause providing in relevant part that "[e]ach Party agrees

14   (a) that any Legal Proceeding relating to this Agreement may (but need not) be brought in any

15   court of competent jurisdiction in the Province of Ontario, and for that purpose now irrevocably

16   and unconditionally attorns and submits to the jurisdiction of such Ontario court." SPA ¶ 12.12.

17   The SPA also contains a choice-of-law provision stating that "[t]his Agreement shall be governed

18   by and construed in accordance with the laws of the Province of Ontario and the laws of Canada

19   applicable in such Province and this Agreement shall be treated, in all respects, as an Ontario

20   contract." SPA ¶ 12.13.

21          *Juniper's Claim Notice under the SPA Re Vendors' Alleged Breaches of SPA*

22          On December 5, 2019, Juniper sent a Claim Notice to Andrade in his role as the Vendors'

23   Representative, asserting breaches of the SPA by the Vendors, including breach of representations

24   and warranties regarding the amount of HTBase's accounts receivable, and breach of

25   representations and warranties regarding HTBase's intellectual property. *See* Claim Notice,

26   Bobrow Decl., Ex. C, ECF 28-4. With respect to the accounts receivable claim, Juniper asserted

27   that the Vendors falsely stated that HTBase had more than $700,000 in accounts receivable when

28   in fact there were no purchase orders or invoices that supported such accounts receivable. *See id.*

United States District Court
Northern District of California

1    With respect to the intellectual property claim, Juniper asserted among other things that the

2    Vendors had failed to disclose that HTBase's Juke product includes open source software

3    components.  *See id.*  Juniper took the position that the damages arising from the alleged breaches

4    of the SPA would exceed the Holdback Amount of $2,500,000 and it declined to release any

5    portion of the Holdback Amount at the one-year anniversary of the transaction closing.  Statement

6    of Claim ¶ 23, Bernstein Decl. Exh. A, ECF 28-10.

7        *The Present Lawsuit*

8        On February 28, 2020, Juniper filed the present lawsuit in the Santa Clara County Superior

9    Court, asserting a claim for breach of contract against five Vendors:  Andrade, Mars Investment

10   Accelerator Fund Inc. ("Mars"), Northspring Capital Partners Inc. (Northspring"), Josmeyr Alves

11   De Oliveira ("Oliveira"), and Ruben Marcos Seidl ("Seidl") (collectively, "Vendor Parties").  *See*

12   Compl., ECF 23.  Juniper alleges that the Vendor Parties breached the accounts receivable

13   representations and warranties in the SPA by falsely stating that HTBase had more than $700,000

14   in accounts receivable.  *See id.* ¶¶ 86-91.  Juniper also alleges that the Vendor Parties breached the

15   intellectual property representations and warranties by failing to disclose that HTBase's Juke

16   product is based on open source software rather than on proprietary technology.  *See id.*

17       In addition, Juniper asserts claims for fraudulent and negligent misrepresentation against

18   Andrade.  *See* Compl. ¶¶ 94-125.  As part of Juniper's due diligence prior to acquiring HTBase,

19   Juniper arranged for HTBase to submit source code and binary files to be scanned by Black Duck,

20   a company specializing in determining whether a company's software incorporates open source

21   software. *See id.* ¶ 34.  Open source software is software that a developer can use, generally free

22   of charge, subject to licensing restrictions.  *See id.* ¶ 35.  Juniper claims that Andrade personally

23   selected which source code and binary files HTBase sent to Black Duck for scanning.  *See id.* ¶

24   40.  Black Duck's scan did not identify any open source software in HTBase's source code or

25   binary files.  *See id.*  ¶ 41.  Nor did Andrade disclose any open source software contained in Juke

26   when engineers and project managers from Juniper and HTBase met in Toronto to discuss

27   HTBase's intellectual property.  *See id.* ¶ 43.  According to Juniper, Andrade stated that Juke's file

28   system was proprietary to HTBase, was HTBase's intellectual property, and was a core component

1   of Juke.  *See id.* ¶ 45.  Juniper claims that after acquiring HTBase, Juniper discovered that Juke

2   contains open source software.  *See id.* ¶¶ 58-68.  Upon making that discovery, Juniper removed

3   Juke from its product catalog.  *See id.* ¶ 68.  After investigating the matter, Juniper concluded that

4   Andrade had not submitted Juke to Black Duck for scanning and/or had altered the Juke code to

5   conceal the open source software.  *See id.* ¶¶ 64-67.  Juniper alleges that it relied on Andrade's

6   material misrepresentations regarding Juke in deciding to enter into the SPA.  *See id.* ¶¶ 107, 123.

7           The Vendor Parties removed the suit to federal district court on April 8, 2020.  *See* Not. of

8   Removal, ECF 1.

9           *The Ontario Action*

10          Approximately one month after removal, on May 7, 2020, the Vendor Parties – Andrade,

11  Mars, Northspring, Oliveira, and Seidl – filed a Statement of Claim against Juniper in the Superior

12  Court in Ontario, Canada ("Ontario Action").  *See* Statement of Claim, Bernstein Decl. Exh. A,

13  ECF 28-10.  A Statement of Claim filed in Ontario is akin to a complaint filed in a United States

14  District Court.  *See* Bernstein Decl. ¶ 34, ECF 28-9.  In the Ontario Action, the Vendor Parties

15  dispute Juniper's set-offs relating to its accounts receivable and intellectual property claims.  *See*

16  Statement of Claim ¶¶ 18-36, Bernstein Decl. Exh. A, ECF 28-10. The Vendor Parties allege that

17  Juniper and its subsidiary, 118 ULC, "have breached the terms of the SPA and breached their duty

18  of good faith and honesty in performing the agreement by arbitrarily retaining the Holdback

19  Amount in bad faith."  ¶ 37.  The Ontario Action is ongoing.

20          *Dismissal of all Vendor Parties Except Andrade from Present Lawsuit*

21          The day after commencing the Ontario Action, the Vendor Parties moved to dismiss or

22  stay the present suit under the doctrine of *forum non conveniens* and principles of comity, arguing

23  that the present suit should be dismissed or stayed pending resolution of the Ontario Action.  *See*

24  Mot. to Dismiss or Stay, ECF 26.  In addition, all the Vendor Parties except Andrade moved to

25  dismiss the present suit for lack of personal jurisdiction.  *See id.*  The Court granted the latter

26  motion, dismissing Vendor Parties Mars, Northspring, Oliveira, and Seidl for lack of personal

27  jurisdiction, with leave to amend.  *See* Order Granting Motion to Dismiss, ECF 66.  The Court

28  deferred consideration of the *forum non conveniens* and comity issues until it was clear which

1  Vendor Parties would remain in the case.  *See id.*  Juniper chose not to amend, leaving Andrade as

2  the only defendant.

3  **II.     LEGAL STANDARD**

4     **A.     *Forum Non Conveniens***

5     "Federal district courts have discretion to dismiss an action under the doctrine of *forum*

6  *non conveniens.*"  *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 948 (9th Cir. 2017).  "Dismissal is

7  appropriate only if the defendant establishes (1) the existence of an adequate alternative forum,

8  and (2) that the balance of private and public interest factors favors dismissal."  *Id*. (quotation

9  marks and citation omitted).  "[A] plaintiff is generally entitled to deference in its choice of forum,

10  especially if the plaintiff is a U.S. citizen or resident."  *Id*. at 949-50.  "For a U.S. citizen's choice

11  of forum to be rejected, the private and public interest factors must strongly favor trial in a foreign

12  country."  *Id*. at 950 (quotation marks and citation omitted).

13     "The private interest factors are:  (1) the residence of the parties and the witnesses; (2) the

14  forum's convenience to the litigants; (3) access to physical evidence and other sources of proof;

15  (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to

16  trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a

17  case easy, expeditious and inexpensive."  *Ayco Farms*, 862 F.3d at 950 (quotation marks and

18  citation omitted).  "The public interest factors are (1) [the] local interest of [the] lawsuit; (2) the

19  court's familiarity with governing law; (3) [the] burden on local courts and juries; (4) [the amount

20  of] congestion in the court; and (5) the costs of resolving a dispute unrelated to [the] forum."  *Id*.

21  (quotation marks and citation omitted, alterations in original).

22     **B.     Comity**

23     "International comity is a doctrine of prudential abstention, one that counsels voluntary

24  forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second

25  sovereign also has a legitimate claim to jurisdiction under principles of international law."  *Mujica*

26  *v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (quotation marks and citation omitted).  The

27  aspect of the doctrine referred to as "comity among courts" or "adjudicatory comity," is "viewed

28  as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case

United States District Court
Northern District of California

6

1   properly adjudicated in a foreign state." *Id*. (quotation marks and citation omitted).  "[C]ourts
2   have struggled to apply a consistent set of factors in their comity analyses."  *Id*. at 603.

3        The Ninth Circuit has found the following factors to be a useful starting point:  (1) "the
4   strength of the United States' interest in using a foreign forum"; (2) "the strength of the foreign
5   governments' interests"; and (3) "the adequacy of the alternative forum."  *Mujica*, 771 F.3d at 603
6   (quotation marks and citation omitted).  With respect to the first factor, U.S. interests, the Ninth
7   Circuit has articulated a non-exclusive list of considerations, including:  "(1) the location of the
8   conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question,
9   (4) the foreign policy interests of the United States, and (5) any public policy interests."  *Id*. at
10  604.  With respect to the second factor, foreign interests, the Ninth Circuit has held that "[t]he
11  proper analysis of foreign interests essentially mirrors the consideration of U.S. interests."  *Id*. at
12  607.  Finally, with respect to the third factor, adequacy of the alternative forum, the Court
13  considers whether the plaintiff has shown that the alternative forum is "clearly unsatisfactory" or
14  would result in "manifest injustice."  *Id*. at 614.

15  **III.   DISCUSSION**

16       Andrade argues that the Court should dismiss Juniper's lawsuit under the doctrine of *forum*
17  *non conveniens*.  Next, Andrade asserts that the Court should dismiss Juniper's suit under
18  principles of comity.  Finally, if the Court is not inclined to dismiss the present suit, Andrade asks
19  the Court to stay it pending resolution of the Ontario Action.  Juniper contends that all of
20  Andrade's arguments are without merit and that the motion should be denied in its entirety.

21       **A.     Motion to Dismiss under Doctrine of *Forum Non Conveniens***

22       In order to prevail on his motion to dismiss on *forum non conveniens* grounds, Andrade
23  must establish that (1) there is an adequate alternative forum and (2) the balance of private and
24  public interest factors favors dismissal.  *See Ayco*, 862 F.3d at 948.  With respect to the first prong,
25  Andrade asserts that Ontario, Canada is an adequate alternative forum for Juniper's claims.  "An
26  alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the
27  other jurisdiction offers a satisfactory remedy."  *Carijano v. Occidental Petroleum Corp.*, 643
28  F.3d 1216, 1225 (9th Cir. 2011).  Under the SPA, Defendant Andrade agreed to accept service in

Ontario; all parties agreed that legal proceedings relating to the SPA may be brought in Ontario; and all parties expressly consented to jurisdiction in Ontario.  SPA ¶¶ 12.3, 12.12.  Several district courts within the Ninth Circuit have found that the Canadian judicial system provides an adequate alternative forum for civil suits involving breach of contract and related claims.  *See, e.g., Carl's Jr. Restaurants LLC v. 6Points Food Servs. Ltd.*, No. CV 15-9827-GHK (ASX), 2016 WL 3671116, at *5 (C.D. Cal. July 7, 2016) (finding Canada an adequate alternative forum for contract claims); *Tradin Organics USA, LLC v. Advantage Health Matters, Inc*., No. 5:14-CV-02041-EJD, 2015 WL 1306929, at *9 (N.D. Cal. Mar. 23, 2015) (finding Ontario, Canada an adequate alternative forum for contract claims); *Etaliq, Inc. v. Cisco Sys., Inc*., No. CV 11-3672 GAF (FFMx), 2011 WL 13220445, at *3 (C.D. Cal. July 20, 2011) (finding Canada an adequate alternative forum for contract and trade secrets claims).  Juniper concedes that Ontario, Canada, is an adequate alternative forum.  *See* Pl.'s Opp. at 6, ECF 77.  Accordingly, the Court finds that Andrade has established that Ontario, Canada is an adequate alternative forum for Juniper's claims.

Andrade's *forum non conveniens* motion thus turns on the second prong, the balance of private and public interest factors.  As noted above, those factors "must strongly favor trial in a foreign country" for a U.S. citizen's choice of forum to be rejected.  *Ayco*, 862 F.3d at 950.  Juniper alleges in its complaint, and Andrade does not dispute, that it was incorporated under the laws of Delaware and maintains its principal place of business in California.  *See* Compl. ¶ 5, ECF 23.  Juniper therefore is a citizen of both Delaware and California and, more generally, of the United States.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (a corporation is a citizen of the state of incorporation and the state where it had its principal place of business).  Consequently, Juniper's choice of forum is entitled to deference unless the private and public interest factors strongly favor Ontario as a more appropriate forum.

Andrade first addresses the public interest factors, then the private interest factors.

### 1.    Public Interest Factors

The public interest factors are:  "(1) [the] local interest of [the] lawsuit; (2) the court's familiarity with governing law; (3) [the] burden on local courts and juries; (4) [the amount of]

United States District Court
Northern District of California

1    congestion in the court; and (5) the costs of resolving a dispute unrelated to [the] forum." *Ayco*

2    *Farms*, 862 F.3d at 950 (quotation marks and citation omitted, alterations in original).

3                                        **a.       Local Interest**

4           In evaluating the first public interest factor, local interest in the lawsuit, the Court asks

5    "only if there is an identifiable local interest in the controversy, not whether another forum also

6    has an interest." *Bos. Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir.

7    2009) (quotation marks and citation omitted).  "Jurisdictions generally have an interest in

8    providing a forum for their citizens to seek redress." *Summers v. Starwood Hotels*, No. CV 11-

9    10608 GAF (MANx), 2013 WL 12113227, at *11 (C.D. Cal. Feb. 27, 2013) (finding local interest

10   factor satisfied for purposes of *forum non conveniens* analysis where plaintiff was a citizen of the

11   forum state); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1115-16 (9th Cir. 2002) (holding in

12   context of personal jurisdiction analysis that "California has a strong interest in providing a forum

13   for its residents and citizens who are tortiously injured").  California plainly has an interest in

14   providing a forum for its citizen, Juniper, to seek redress for Andrade's alleged misconduct.

15          Andrade argues that this case has little connection with California, characterizing it as "a

16   Canadian contract dispute" concerning "the purchase of a Canadian company by another Canadian

17   company."  Mot. at 6, ECF 74.  The Court finds this argument to be unpersuasive.  While

18   Juniper's Canadian subsidiary, 118 ULC, was designated as the purchaser under the SPA, it is

19   clear from the record that Juniper made the decision to acquire HTBase, engaged in substantial

20   negotiations with Andrade in California prior to the acquisition, and created 118 ULC solely for

21   purposes of the acquisition.  *See* Hutchins Decl. ¶¶ 5-28, ECF 27-4; Minnis Decl. ¶ 8, ECF 28-12.

22   The Court also finds unpersuasive Andrade's argument that California lacks a sufficient interest in

23   the suit because much of the conduct giving rise to Juniper's claims occurred in Ontario, for

24   example, execution of the SPA and certain of Andrade's alleged misrepresentations.  *See* SPA ¶

25   5.1; Compl. ¶¶ 43-46.  This Court "need not hold . . . that California is the principal locus of the

26   case or that California has more of an interest than any other jurisdiction in order to conclude that

27   California has a meaningful interest in this litigation." *Bos. Telecommunications*, 588 F.3d at 1212

28   (quotation marks omitted).  The fact that California citizen Juniper seeks redress against Andrade,

                                              9

United States District Court
Northern District of California

1    who currently resides in California, is sufficient to give California an interest in this suit.

2    This factor weighs against dismissal.

3    **b.      Court's Familiarity with Governing Law**

4    The second public interest factor is this Court's familiarity with the governing law.  The

5    SPA provides that "[t]his Agreement shall be governed by and construed in accordance with the

6    laws of the Province of Ontario and the laws of Canada applicable in such Province and this

7    Agreement shall be treated, in all respects, as an Ontario contract."  SPA ¶ 12.13.  "Many *forum*

8    *non conveniens* decisions have held that the need to apply foreign law favors dismissal."  *Piper*

9    *Aircraft Co. v. Reyno*, 454 U.S. 235, 260 n. 29 (1981) (collecting cases).  Juniper argues that the

10   similarity between California law and Ontario law renders this factor neutral.  The Court

11   disagrees.  "Although this Court is capable of applying Canadian law, such application would

12   impose a substantial burden on both the Court and the jurors, to research, understand, and apply

13   the foreign law."  *Gund v. Philbrook's Boatyard*, 374 F. Supp. 2d 909, 914 (W.D. Wash. 2005).

14   While "this factor alone is not sufficient to warrant dismissal," it does weigh in favor of dismissal.

15   *Piper Aircraft*, 454 U.S. at 260 n. 29.

16   Andrade's discussion of this public interest factor in his moving papers includes a citation

17   to a Canadian decision, *Blue Note*.  *See Blue Note Mining Inc. v. CanZinco Ltd.* 2008 CarswellOnt

18   5154.  Andrade cites *Blue Note* for the proposition that the permissive Attornment clause

19   contained in the SPA became a mandatory forum selection clause when the Vendor Parties

20   commenced the Ontario Action.  *See* Mot. at 8, ECF 74.  In its opposition, Juniper argues that *Blue*

21   *Note* does not deprive this Court of jurisdiction over the present suit, and that at most *Blue Note*

22   suggests that the Ontario court would be unlikely to grant a motion to dismiss or stay the Ontario

23   Action on *forum non conveniens* grounds.  *See* Opp. at 15-17, ECF 77.  In his reply, Andrade

24   agrees that *Blue Note* does not deprive this Court of jurisdiction.  *See* Reply at 9-12, ECF 78.  He

25   argues, however, that under *Blue Note* the mandatory nature of the Attornment clause once the

26   Ontario Action was commenced means that the Ontario Action will go forward regardless of this

27   Court's rulings.  *See id*.  Andrade contends that this Court should consider the burdens that would

28   be imposed by requiring the parties to pursue simultaneous parallel actions when ruling on his

motion.  *See id.*

At the hearing, Juniper argued persuasively that Andrade's reply shifted the thrust of his motion from the traditional *forum non conveniens* argument made in the moving papers to a new argument based primarily on the asserted overlap between the present suit and the Ontario Action. Juniper disputed Andrade's characterization of the two actions as parallel, and it sought leave to address that issue in a sur-reply.  The Court granted Juniper leave to file a short sur-reply addressing the overlap, or lack therefore, between the present suit and the Ontario Action.  *See* Sur-Reply, ECF 83.  In the Court's view, *Blue Note* and the extent to which this suit overlaps with the Ontario Action do not bear on the second public interest factor, the Court's familiarity with the governing law.  However, parallel actions properly may be considered as part of the private interest factors in a *forum non conveniens* analysis.  The Court therefore addresses *Blue Note* and the weight to be given the pendency of the Ontario Action in the context of the seventh private interest factor, addressing "all other practical problems," below.

The second public interest factor, this Court's familiarity with the governing law, weighs in favor of dismissal.

### c.        Burden on Local Courts and Juries

The third public interest factor is the burden the litigation would place on local courts and juries.  Andrade asserts that the present lawsuit would impose a significant burden on this Court, especially in light of the disruption caused by the COVID-19 pandemic.  Although the COVID-19 pandemic unquestionably has been disruptive to this Court's operations, Andrade has not presented evidence that the burdens of litigation imposed on this Court would be any different than those imposed on the Ontario court.  Moreover, despite the COVID-19 pandemic, this Court has heard two motions to dismiss in the case, referred the parties to a magistrate judge for a settlement conference, and set the case for trial.  *See* Minute Entries, ECF 50, 72, 80; Case Management Scheduling Order, ECF 52.

Accordingly, the Court finds that this factor is neutral.

### d.        Court Congestion

The fourth public interest factor considers the relative congestion of the dockets of this

forum and the proposed alternative forum, and whether the alternative forum would offer a speedier trial.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.").  Andrade has not submitted any evidence regarding congestion in the Ontario courts.  In opposition, Juniper points out that the present action has been assigned a trial date, while the Ontario Action has not.  *See* Suppl. Bernstein Decl. ¶ 9, ECF 77-1.  Juniper apparently means to suggest that the present suit is further along than the Ontario Action.  However, this Court does not have sufficient information to make that determination.

This factor is neutral.

### e.      Costs of Resolving a Dispute Unrelated to the Forum

The fifth public interest factor is the costs of resolving a dispute unrelated to the forum. Andrade cites *Gulf Oil* for the proposition that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  Andrade's reliance on the cited language from *Gulf Oil* is misplaced, as this case arises out of a transaction entered into by a local corporation, which has brought suit in its home forum against and individual who currently resides in the forum.

This factor weighs slightly against dismissal.

### f.      Balancing of Public Interest Factors

Balancing these factors, the Court finds that the first factor (local interest) weighs strongly against dismissal and the second factor (familiarity with governing law) weighs strongly in favor of dismissal.  The third and fourth factors are neutral, and the fifth factor weighs slightly against dismissal.  Thus, the public interest factors weigh fairly evenly for and against dismissal.

### 2.      Private Interest Factors

The private interest factors are:  "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a

United States District Court
Northern District of California

case easy, expeditious and inexpensive." *Ayco Farms*, 862 F.3d at 950 (quotation marks and citation omitted).

### a.        Residence of Parties and Witnesses

The first private interest factor is the residence of parties and witnesses.  "In assessing the weight to be accorded to the residence of the parties and witnesses, courts look to 'the materiality and importance of the anticipated witnesses' testimony." *Kleiner v. Spinal Kinetics, Inc.*, No. 5:15-CV-02179-EJD, 2016 WL 1565544, at *4 (N.D. Cal. Apr. 19, 2016) (quoting *Gates Learjet Corp.*, 743 F.2d at 1335-36).  Juniper's fraud claims are based on Andrade's alleged negligent and intentional misrepresentations regarding Juke during negotiation of the SPA and the pre-acquisition due diligence process.  In particular, Juniper claims that Andrade concealed the fact that Juke contains open source software and misrepresented that Juke is based on proprietary code developed by HTBase.  *See* Compl. ¶¶ 98-108, 116-25.  As part of that concealment, Juniper alleges, Andrade ensured that the code sent to Black Duck during the due diligence process would not reveal the inclusion of the open source code in Juke.  *See id.* ¶¶ 99, 117.  Juniper's contract claim is based on Andrade's alleged breach of representations and warranties contained in the SPA regarding Juke and HTBase's accounts receivable.  *See id.* ¶¶ 85-91.

The witnesses with information most material to these claims are Andrade himself and the Juniper employees involved in the contract negotiations, the due diligence, and the discovery that Juke contains open source software.  Andrade currently resides in California.  *See* Suppl. Bobrow Decl. ¶ 11, ECF 77-4.  At least a dozen current and former Juniper employees who dealt with Andrade, were involved in the due diligence process, or were involved in the discovery of the open source software also reside in California.  *See* Hutchins Decl. ¶¶ 33-34, ECF 27-4; Suppl. Bobrow Decl. Exh. A, ECF 77-5.  It thus appears that most, if not all, of the relevant witnesses are located in California.

Andrade contends that the Court should give substantial weight to the fact that the Vendor Parties who have been dismissed from this action – Mars, Northspring, Oliveira, and Seidl – reside in Canada and Brazil.  Andrade argues that, "Undoubtedly, each of the Foreign Defendants, who were once named defendants in the present action, are relevant witnesses and cannot be compelled

to testify in the U.S. proceedings." Mot. at 11, ECF 74.  However, Andrade does not present any evidence showing what information those witnesses might have with respect to Andrade's alleged misrepresentations, the inclusion of open source software in Juke, or any other issue material to Juniper's claims.  Andrade argues that the conduct giving rise to Juniper's claims occurred in Toronto, pointing to Juniper's allegations that he made misrepresentations during a meeting of engineers and project managers that occurred in Toronto.  *See* Compl. ¶¶ 43-46.  The only individuals that the complaint identifies as being at that meeting are Andrade and Joshua George, Vice President of Engineering at Juniper.  *See id*.  Both Andrade and George reside in California.  *See* Suppl. Bobrow Decl. ¶ 11 & Exh. A, ECF 77-4; Hutchins Decl. ¶ 33, ECF 27-4.  Andrade has not identified any attendee at the Toronto meeting who does not reside in California.

This factor weighs against dismissal.

### b.      Forum's Convenience to Litigants

The second private interest factor is the forum's convenience to the litigants.  Juniper's headquarters is located in this district, and Andrade currently resides in this district.  *See* Hutchins Decl. ¶ 16, ECF 27-4; Suppl. Bobrow Decl. ¶ 11, ECF 77-4.

This factor weighs against dismissal.

### c.      Access to Physical Evidence and Other Proof

The third private interest factor is access to physical evidence and other proof.  Neither party has identified any particular physical evidence that will be critical to Juniper's claims.  Andrade argues that any such evidence necessarily is in the control of one of the parties, and therefore can be provided in either California or Ontario.  Juniper argues that its witnesses, documents, and computer media are concentrated in California, and that the same is true for Andrade, who resides in California.  Because it appears that all relevant physical evidence is in control of the parties, and therefore can be provided in either forum, the Court concludes that this factor is neutral.  *See Mullaney v. Nutribullet, L.L.C.*, No. 2:19-cv-00447-DDP (SSx), 2020 WL 1067006, at *2 (C.D. Cal. Jan. 14, 2020) ("[P]hysical evidence is in control of the parties and can be provided in either forum.").

This factor is neutral.

#### d.      Whether Unwilling Witnesses can be Compelled

The fourth private interest factor is whether unwilling witnesses can be compelled to testify.  Andrade asserts that the dismissed Vendor Parties, Andrade, Mars, Northspring, Oliveira, and Seidl, cannot be compelled to testify in the United States.  As discussed above, Andrade has not explained what testimony these parties could offer that would be material to Juniper's claims.

Juniper contends that it does not have the power to force its former employees to participate in the Ontario Action, and travel restrictions arising from COVID-19 may raise barriers to such participation even if the former employees are willing.  Juniper identifies several former employees that dealt with Andrade or otherwise played key roles in the acquisition of HTBase, all of whom reside in California.  *See* Hutchins Decl. ¶¶ 33-34, ECF 27-4; Suppl. Bobrow Decl. Exh. A, ECF 77-5.  However, Juniper does not present evidence that these witnesses would not be willing to testify voluntarily in the Ontario Action, or that they would be unable to travel there. See Carijano, 643 F.3d at 1231 ("[T]he initial question is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify.").

This factor is neutral.

#### e.      Cost of Bringing Witnesses to Trial

The fifth private interest factor is the cost of bringing witnesses to trial.  As discussed above, Andrade has failed to identify any material witnesses who reside outside of California.  Thus, the cost of bringing witnesses to trial in this district would be minimal.  The cost of bringing witnesses from California to Ontario likely would be significant, particularly if COVID-19 quarantine requirements are in effect.

This factor weighs against dismissal.

#### f.      Enforceability of Judgment

The sixth private interest factor is the enforceability of the judgment.  Judgments rendered by United States District Courts and Canadian courts are enforceable in both countries.  *See Cinematix, LLC v. Einthusan*, No. 19-CV-02749-EMC, 2020 WL 227180, at *3 (N.D. Cal. Jan. 15, 2020) (Canadian judgments are enforceable in the United States); *Kellerman v. Inter Island*

*Launch*, No. 2:14-CV-01878-RAJ, 2015 WL 6620604, at *5 (W.D. Wash. Oct. 30, 2015) (United States judgments are enforceable in Canada).  The parties do not argue otherwise.

This factor is neutral.

### g.      All Other Practical Problems

The seventh and final private interest factor allows the Court to consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Ayco Farms*, 862 F.3d at 950.  Each side raises practical considerations that properly may be evaluated under this factor.  Andrade argues that in light of the parallel action pending in Ontario, the Court should dismiss the present suit to avoid duplication of resources and the risk of inconsistent judgments.  Juniper argues that if it were required to litigate its claims in Ontario instead of in this Court, Canadian discovery practice would add additional expense and burdens.

Addressing Juniper's argument first, the Court finds the declaration of Andrew Bernstein sufficient to establish that litigation of Juniper's claims in Ontario would be more difficult in some respects than litigating in this forum.  *See* Bernstein Decl. ¶¶ 29-33, ECF 28-9.  Mr. Bernstein describes the particular aspects of Canadian discovery practice that would create additional hurdles Juniper would have to overcome in order to depose witnesses before trial and obtain other evidence in the Ontario Action.  *See id.*  The Court finds that this consideration weighs slightly against dismissal.

Turning to Andrade's argument that dismissal is appropriate in light of the parallel Ontario Action, the Ninth Circuit has made clear that parallel litigation properly may be considered in weighing the private interest factors in a *forum non conveniens* analysis.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) ("Given the existence of the related proceedings, it is all the more clear that the private interest factors weigh in favor of dismissal.").  District courts within the Ninth Circuit have considered the impact of parallel actions under the seventh private interest factor, addressing "all other practical problems." *Globatrac LLC v. JB Squared Ltd.*, No. CV-15-9278-MWF (SPX), 2016 WL 9045479, at *5 (C.D. Cal. Feb. 5, 2016) (considering parallel litigation in England under seventh private interest factor in *forum non conveniens* analysis).  This Court likewise considers the impact of the Ontario Action in the context of the seventh private

United States District Court
Northern District of California

1    interest factor.

2         The impact of the Ontario Action on the present lawsuit is illuminated by the Canadian

3    *Blue Note* decision cited by Andrade and discussed briefly above.  *Blue Note* involved a non-

4    exclusive contractual jurisdiction provision stating that any action relating to the contract "may

5    (but need not) be brought in any court of competent jurisdiction in the Province of Ontario."  *Blue*

6    *Note,* 2008 CarswellOnt 5154 ¶ 3.  One of the parties to the contract, Blue Note, filed a statement

7    of claim in Ontario, seeking among other things declaratory relief that it was not obligated to

8    indemnify other parties to the contract, CanZinco and Breakwater, with respect to costs arising

9    from pending litigation in the Province of New Brunswick.  *Id.*  CanZinco and Breakwater moved

10   for an order staying the Ontario Action on the basis of *forum non conveniens*.  The Ontario court

11   denied the motion, finding that "while the parties' contract contains a non exclusive jurisdiction

12   provision, once an action is brought in Ontario, the bar against motions such as this one renders

13   the situation analogous to an exclusive jurisdiction contract."  *Id.* ¶ 18.  The Ontario court went on

14   to hold that although CanZinco and Breakwater were not estopped from bringing a *forum non*

15   *conveniens* motion, they had to "show strong cause" to prevail.  *Id.*  The Ontario court found that

16   CanZinco and Breakwater had not met their burden to show "strong cause" for a stay, and

17   therefore denied the motion.  *Id.* ¶ 26.  The Ontario court was not swayed by the fact that the New

18   Brunswick litigation had been filed first, observing that "the order of commencement of

19   proceedings is not a determinative factor."  *Id.* ¶ 21.

20        Andrade argues that the *Blue Note* decision is significant here because it indicates that if

21   Juniper were to file a *forum non conveniens* motion to dismiss or stay in the Ontario Action –

22   Juniper has not done so to date – such motion likely would be denied.  Thus, Andrade contends,

23   "the question presented to this Court is whether the Parties should have to simultaneously litigate

24   the same issues both in the Ontario Action and this action."  Reply at 12, ECF 78.  This Court

25   agrees that under *Blue Note*, any *forum non conveniens* motion filed in the Ontario Action likely

26   would be denied.  Consequently, this Court must presume that the Ontario Action will proceed to

27   conclusion.  The critical question for purposes of Andrade's *forum non conveniens* motion, then, is

28   the degree of overlap between the Ontario Action and the present lawsuit.  While Andrade asserts

United States District Court
Northern District of California

17

that the two actions will require determination of the same issues under Ontario law, Juniper disputes that assertion and argues that there is little overlap between the two actions.

In the present lawsuit, Juniper claims that Andrade breached the SPA by falsely stating that HTBase had more than $700,000 in accounts receivable by failing to disclose that HTBase's Juke product is based on open source software rather than on proprietary technology. *See* Compl. ¶¶ 86-91. Juniper also asserts claims for fraudulent and negligent misrepresentation against Andrade based on his alleged material misrepresentations regarding Juke. *See* Compl. ¶¶ 94-125. In the Ontario Action, the Vendors Parties (including Andrade) claim that Juniper and its subsidiary, 118 ULC, "have breached the terms of the SPA and breached their duty of good faith and honesty in performing the agreement by arbitrarily retaining the Holdback Amount in bad faith." Juniper Statement of Claim ¶ 37, Bernstein Decl. Exh. A, ECF 28-10. The Vendor Parties contend that Juniper did not have a valid basis for retaining the Holdback Amount because Juniper's claims against them for breach of the SPA, arising from the accounts receivable and open source software, are without merit and did not cause any damages to Juniper. *See id.* ¶¶ 24-36.

The Court finds that there is substantial overlap between these two actions. Both will require factual determinations whether the Vendor Parties, including Andrade, made material misrepresentations regarding HTBase's accounts receivable and Juke, and whether such material misrepresentations caused damages to Juniper. The Court finds unpersuasive Juniper's argument that those factual determinations will not be made in the Ontario Action. Juniper argues that the Vendor Parties' claim in the Ontario Action turns on whether *Juniper* acted in bad faith, while Juniper's claims in the present lawsuit turn on whether *Andrade* breached the SPA and made material misrepresentations. Juniper correctly points out that those claims have different elements. *See* Bernstein Decl. ¶¶ 1-15 (elements of breach of contract under Canada law), ¶¶ 16-27 (elements of fraudulent and negligent misrepresentation under Canada law), ECF 28-9. What Juniper's argument ignores, however, is that the basis for the Vendor Parties' bad faith claim against Juniper is that they did *not* breach the SPA and thus that Juniper did not have a good faith basis to retain the Holdback Amount. To prevail on that theory, the Vendor Parties will have to present evidence on the merits of Juniper's contract claims against them, and Juniper necessarily

will have to respond in kind.  The litigation of the Vendor Parties' bad faith claim in the Ontario Action will substantially overlap with litigation of Juniper's contract claim in the present lawsuit.

Juniper argues that any factual determinations by the Ontario court regarding the merits of Juniper's claims against the Vendor Parties will be merely incidental to the ultimate determination whether Juniper acted arbitrarily and in bad faith in retaining the Holdback Amount.  "Preclusive force attaches to determinations that were necessary to support the court's judgment in the first action," but litigants "are not precluded from relitigating an issue if its determination was merely incidental to the judgment in the prior action." *Resol. Tr. Corp. v. Keating*, 186 F.3d 1110, 1115 (9th Cir. 1999).  Juniper points out that even if its claims against Andrade are determined to lack merit, Juniper in good faith could have believed them to be meritorious and retained the Holdback Amount on that basis.  Consequently, Juniper argues, no preclusive effect would attach to factual determinations regarding the Vendor Parties' conduct.  The Court does not find Juniper's argument on this point persuasive.  As framed in the Statement of Claim filed in the Ontario Action, whether the Vendor Parties breached the SPA and whether Juniper suffered resulting damages appear to be inextricably intertwined with the Vendor Parties' claim that Juniper breached the SPA by arbitrarily retaining the Holdback Amount in bad faith.

This conclusion is supported by the discovery plan proposed by Juniper's counsel in the Ontario Action.  *See* Proposed Discovery Plan, Suppl. Elliott Decl. Exh. 1, ECF 78-1.  Juniper's counsel identified the "Legal Issues for Determination at Trial" in the Ontario Action to include whether Juniper suffered any damages as a result of the Vendor Parties' alleged breaches of the SPA.  *See id.*  Juniper's counsel indicated that the Ontario Action will require discovery of the numerous "Relevant Documents," including those pertaining to:

> (a) Juke product and any related software, including but not limited to:
> i. Juniper's use of, and plan for use of, Juke by the Defendants;
> ii. Juniper's replacement of JukeFS with Red Hat;
> iii. Juniper's integration of Juke with Contrail;
> iv. Juniper's efforts and discussions relating to open-sourcing Juke;
> v. forensic analysis allegedly conducted by Juniper of Juke on or around November 15, 2019;
> vi. Juniper's plans to shelve the Juke product;
> vii. HTBase's development of Juke (including Maestro), including the identity and role of all persons involved in the same;

United States District Court
Northern District of California

(b) SPA and generally Juniper's acquisition of HTBase including, (1) all due diligence documents, (2) Juniper's internal communications about the HTBASE acquisition or due diligence, and (3) HTBASE's internal documents, whether communications or otherwise, about HTBASE's acquisition by Juniper or due diligence relating thereto, (4) communications amongst and/or between HTBASE and its shareholders about HTBASE acquisition or due diligence[.]

*Id.*

In the view of Juniper's own counsel in the Ontario Action, then, discovery in the Ontario Action will involve virtually all documents relating to the SPA and any damages suffered by Juniper as a result of the Vendor Parties' alleged breach of the SPA. Factual determinations regarding those issues thus may well have preclusive effect in the present action. Even if that were not the case, it appears that the Ontario Action will involve litigation of many of the same issues raised in the present suit, many of the same witnesses, and much of the same evidence.

The Court finds that the seventh private interest factor weighs heavily in favor of dismissal. As a practical matter, it would make little sense for two courts to oversee litigation involving the SPA, its breach, and damages flowing therefrom. While the additional burdens that Canadian discovery practice would impose on Juniper weighs slightly against dismissal, those burdens are far outweighed by the duplication of cost and effort, as well as the risk of inconsistent rulings, that would result from allowing the two cases to proceed on parallel tracks.

### h.        Balancing of Private Interest Factors

The Court finds that the first factor (residence of parties and witnesses), second factor (forum's convenience to the litigants), and the fifth factor (cost of bringing witnesses to trial) weigh against dismissal. The third factor (access to evidence), fourth factor (whether unwilling witnesses can be compelled), and sixth factor (enforceability of judgment) are neutral. The seventh factor (all other practical problems) weighs in favor of dismissal.

Balancing these factors overall, the Court finds that they tip in favor of dismissal. The three factors favoring Juniper, relating to the convenience of this forum for the parties and witnesses, weigh less heavily than they otherwise might because the Ontario Action will proceed regardless of this Court's rulings. Because Juniper and Andrade must litigate issues relating to the SPA in that forum in any event, the inconvenience of litigating all issues there is entitled to only

moderate weight.  In contrast, the duplication of resources and risk of inconsistent rulings that would result from ongoing parallel litigation regarding the SPA weighs heavily in favor of dismissal.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) ("Given the existence of the related proceedings, it is all the more clear that the private interest factors weigh in favor of dismissal.").

### 3.    Overall Balancing of Public and Private Interest Factors

As discussed above, the Court finds that the public interest factors weigh fairly evenly for and against dismissal.  The private interest factors, however, weigh heavily in favor of dismissal in light of the parallel Ontario Action.  In this Court's view, it makes little sense to require the parties to litigate the alleged breaches of the SPA and closely related issues in two jurisdictions.  Doing so would result in added expense to the parties, waste of judicial resources, and the risk of inconsistent rulings.  The Court finds these considerations especially compelling given the parties' contractual agreement to the jurisdiction of Ontario and the fact that all issues will be decided under Ontario law.  After considering the parties' arguments, the record as a whole, and the applicable legal authorities, the Court concludes that Andrade has met his burden to show that the public and private interest factors "strongly favor trial in a foreign country" as required for Juniper's choice of forum to be rejected.  *See Ayco*, 862 F.3d at 950.

Andrade's motion to dismiss under the doctrine of *forum non conveniens* is GRANTED.

### B.    Other Arguments Raised in Motion

Having concluded that this action is subject to dismissal on *forum non conveniens* grounds, the Court need not and does not reach Andrade's alternative argument for dismissal under the principles of comity.

With respect to Andrade's alternative motion to stay, the Court has considered whether it might be more appropriate to stay the present action under the doctrine of *forum non conveniens*, rather than dismiss it.  District courts within the Ninth Circuit have found that a balancing of the *forum non conveniens* factors may warrant a stay of litigation rather than dismissal.  *See, e.g., MGA Entm't Inc. v. Deutsche Bank AG*, No. CV 11-4932-GW(RZX), 2012 WL 12892902, at *9 (C.D. Cal. Feb. 27, 2012) (finding that either dismissal or stay was appropriate on *forum non*

*conveniens* grounds); *Ministry of Health, Province of Ontario, Canada v. Shiley Inc.*, 858 F. Supp. 1426, 1442 (C.D. Cal. 1994) (staying action on *forum non conveniens* grounds).  Under the circumstances presented here, however, the Court finds that dismissal is the more appropriate result.  As discussed above, Juniper and Andrade will be addressing the breach of the SPA and resulting damages in the Ontario Action.  This Court sees no benefit to having the parties litigate those issues in the Ontario Action, only to re-litigate the same or closely related issues here.

Accordingly, Andrade's alternative motion to stay is TERMINATED AS MOOT.

## IV.   ORDER

(1)   Defendant Andrade's motion to dismiss is GRANTED on *forum non conveniens* grounds and his alternative motion to stay is TERMINATED AS MOOT;

(2)   This order terminates ECF 74; and

(3)   The Clerk shall close the file.

Dated:  August 10, 2021

_____
BETH LABSON FREEMAN
United States District Judge